Case No. 14-3864 United States of America v. Divna Maslenjak Argument not to exceed 15 minutes per side. Mr. Haney, you may proceed for the appellant. Thank you. May it please the Court, Patrick Haney, Jeff Nygaard, Kirk O'Mellis, and the provost and counsel for the appellant Divna Maslenjak. I'd like to reserve four minutes for rebuttal. The Supreme Court has repeatedly emphasized that citizenship is a most precious right, and the revocation of a naturalized citizen's citizenship is tantamount to exile or banishment, and it's for that reason that in civil proceedings the Supreme Court has held that a naturalized citizen may not be denaturalized based on a false statement unless that statement is material. That's the Cummings case from 1988. Since that time, every other circuit court to address whether the criminal counterpart to the statute at issue in Cummings, and that's 18 U.S.C. 1425a, whether that statute also contains a materiality requirement, has held that it does. And every single one of those circuit courts has defined that the government must prove to demonstrate materiality based on Justice Brennan's controlling concurrence in Cummings. And that's the government must demonstrate the defendant misrepresented the material fact, and it's fair to infer that the citizen was actually ineligible. Well, you know, Congress knows how to use the word material because it's used it in a lot of different contexts dealing with false statements, right? That's certainly true, Your Honor, but it's also true— And in some ways that's the biggest obstacle you have to—that you encounter. It's true that 1425a does not use the word material, but it's also true that there's nothing magic about the word material. That's the Federico case and others that have held that a materiality requirement can be imported into the statute even where the statute does not contain the word material. But, Mr. Paney, in this case, you've got Section 1451a that does mention materiality, and 1451e does not. That's correct. 1451e, which is the statute that requires the mandatory consequence of conviction for 1425a, the denaturalization of the citizen. That's correct. Well, so your client was convicted under 1425. That's correct. And then that would reference to 1451e. Do you agree? Yes, that's the mandatory consequence of conviction. So it's just an automatic act. If you're convicted under 1425a, then you refer to 1451e, correct? No, I believe you refer to 1451a, which is the mandatory consequence of conviction. All right. Go ahead. In this case, the district court expressly—in this case, Ms. Massingaff was convicted after the district court, over express objection, expressly instructed the jury to the exact opposite. Judge Pearson instructed, quote, a false statement containing an immigration denaturalization document does not have to be material in order for the defendant to violate the law. And she further found that even if you find—she further instructed that even if you find that that statement did not influence the denaturalization decision, you can convict. And that's exactly backwards of what the law requires. Excuse me, but you indicated earlier you thought it cross-referenced to 1451a. But now the statute, 1451e, says citizenship unlawfully procured when a person shall be convicted under Section 1425 of Title 18 and so forth and so on. Would that be correct? I apologize. It's 1451e. That's correct. Okay, so it's 1451e. You're convicted under 1425. That's correct. You lose your citizenship under 1451e. And that's really automatic. I mean, there's no—the trial judge basically has no discretion at that point. That's correct. It's a mandatory consequence of conviction, and that's the exact reason why the other circuit courts, to address whether 1425a contains a materiality requirement, have held that it does. I'm hung up on why you are so convinced that Congress answers this question when Congress deals with 1451a. How could Congress have come to any other result when a says it has a materiality requirement? The other circuit courts that have addressed this, including Latching from the Seventh Circuit, Puerto from the Ninth Circuit, have held that the elements for 1425a are derived from the Supreme Court's decision. But you realize, to answer my question, that you're flipping over to how circuits have interpreted the Supreme Court case. And you start out by saying Brennan says materiality is required, and so why are we even here? But he didn't say that in connection with the facts of this case. So what did he say in Congress that you think means that he would have also extended the materiality requirement to 1451e? I'm not asking what the other circuits have said. So it's not that—well, first, I think that the entire court in Congress agrees that there is a materiality requirement. Well, of course. The statute says there is. Because there's a—this is—Congress addressed a civil proceeding in which it was a civil proceeding. Judge McKee is really asking you, I think, why the reasoning of those other courts should be persuasive to us given that Congress comes out of a different context. Does that get it? Not really. I just want to know, before we go to the other circuits, what you take out of the language in Congress to suggest that it applies to a different statutory section that has different wording and arises out of a different type of a procedure. Because it's the same consequence, and that's the mandatory denaturalization. And that's the key point here, and that's the point that the government doesn't even address in its refund appeal. So it's the consequences. The answer to my question is it's because of the consequences. That's correct. This punishment is tantamount to banishment or exile, and it is mandatory upon—it's a mandatory consequence of convention under 1425. So the mandatory nature of denaturalization requires that the materiality requirement be parallel. That is correct, and that's especially so because— So why doesn't it make more sense to say materiality is required in a strictly civil proceeding but not in a proceeding where the deportation results as a result of the criminal conviction, where you have all kinds of additional due process rights? Well, I would say that the due process rights require the government to prove materiality, and that's one of the issues in this case. And why is it not mentioned in any of the sections that your client was convicted of? There's nothing magic about the word material, and that's the Federico case in Congress. Why does due process require materiality? I mean, common sense might require materiality. You're going to have me ask your adversary what interest in the world the United States has in denaturalizing people who make immaterial statements. But—so it might not make common sense, but why does due process require it? The due process is required to be convicted under every element of the statute. Well, that's pretty circular. A citizen should—that's common sense. A citizen should not lose her citizenship based on immaterial false statements. That's about—I mean, that's about the problem you get into here, and I think there are plenty of problems for the government. You've got to get me wrong, but the problem you run into here is the saying, well, this should be the law, therefore it is the law. And I submit that it's because of the unique circumstances and the consequence of conviction is so severe that that's where the materiality requirement comes from. It's true. 1425A does not contain the word materiality. Well, look, we all assume that you're right about the gravity of the end result. I don't think anybody argues about that. But why does gravity of the situation override the express language of the statute? I mean, we could all cite to a hundred others Supreme Court cases that says we start with the statute, the language of the statute, and we end with the language of the statute if it's not ambiguous. Sure. So that draws a nice distinction between this court's decision in Congo where 1015A criminalized any false statement versus 1425A, which criminalizes statements that are contrary to the law. And so when you interpret that contrary to the law, it should be interpreted to include only material false statements. And it would freely derive that it only – that contrary to the law, it would only include material statements. I point the court to the other circuit courts that have addressed this, and that's the First, Fourth, Seventh, and Ninth Circuits. But don't we have different circumstances there? As I recall, in the Ninth Circuit case, the Quirkia case, it was basically stipulated that there was a materiality requirement for it. I don't recall that they actually analyzed it in great depth. And that's an important point, Your Honors, is that in most of these cases the government does concede there is a materiality requirement, including before this court in the 2015 Shorjia case. And there's a reason, I assume, that the government advances materiality here even though it didn't in Shorjia and largely doesn't across the country. And that's because it knows it cannot prevail on harmless error. What about – well, it also has to take that argument. It's going to sit in jury instructions here. But what about – do you have anything to say about the government, the consequences of the government's taking inconsistent positions across the country on the interpretation of a federal criminal statute? Yes, the government – you're exactly right, Judge. The government does take inconsistent positions, including before this court. In Shorjia, they conceded materiality. And though this court reserved the question as an open question whether 1425A does require materiality in this circuit, it's clear that the government's opposition recognizes that it does. All right. May it please the court, Dan Rehke. I represent the government in this appeal. Shorjia – I'd just like to start off. Shorjia, the government did not concede that there was a materiality requirement. The government noted in its brief that the Sixth Circuit – it was unable to find a Sixth Circuit case that addressed whether there was a materiality requirement in 1425A. It also noted that other circuits had found a materiality requirement, but it did not concede. What position – what did the district court charge in that case? In Shorjia? Uh-huh. What did it charge with respect to materiality? It gave an instruction that arguably contained a materiality requirement. Okay. And did you object? In Shorjia? Uh-huh. No. We all objected. That was a plain error – a plain error analysis under Shorjia. So there is inconsistency. You concede that. There is inconsistency, but there was not a concession that there was a materiality requirement in this case. Let me ask you something else. What interest does the United States have in prosecuting people who make immaterial statements, in other words, statements that had absolutely nothing to do with whether the person obtained naturalization? The United States really doesn't have a huge interest in doing that. I mean, that's not really what happened here. These statements were material. Well, they were, but the jury – I mean, did you ask for the instruction that was given? Yes. Well, then, didn't you expect to get it, perhaps? Yes, but we were – Or did you expect it to be rejected? Well, it could have been rejected, but if I were to talk – I mean, wasn't that a little dangerous in light of the precedent against you and in light of – Well, we relied on Tonga at the time. The district court relied on Tonga, too, even though Tonga dealt with a different statute. It was a similar statute, Tonga's false statement in an immigration proceeding. Well, and I have a couple points, and I'm going to shut up and let my colleagues say what they want to ask you. But are you aware of any other criminal statute in the code of the United States that involves a false statement that does not have a materiality requirement? No. The only ones I can think of that are closer to me are tax fraud statutes, but they're material. Okay, and doesn't it strike you – I mean, I know there's all this stuff about additional procedural safeguards in a criminal proceeding, but really that's not what we're talking about. What we're talking about is the elements of a particular – if it were a cause of action. And why should the elements be less obvious for a criminal proceeding than for a civil one? Well, in this case, I can't really answer why Tonga would have a materiality requirement or not have a materiality requirement in that statute in 1425. Well, I mean, can you think of any reason that you would have – I mean, can you think of any other context in which there's a criminal offense with a parallel civil cause of action, and the elements of the civil offense are more strenuous and tougher than those of the criminal offense? No, but immigration is really kind of a different offense than most criminal offenses. You know, they come into this country – it's a high standard to get into this country. And what the Maslami Act – the different Maslami Act did was misrepresent her husband's whereabouts. And activity during the Bosnian-Serb War and tried to pretend that they were refugees, but actually they were persecuted refugees. That's a high standard. The remedy for that may not be making law that is out of kilter with the position of the United States previously and out of kilter with the position of other courts of appeals. The remedy for that might be trying this defendant again. For him, you could almost certainly, I would think, obtain a conviction if materiality is required. I also think that materiality was demonstrated here. Yeah, I know. That's the point. Another part of our argument is that this is really – even if the court shouldn't have given the instruction that it gave on 1425A, the evidence demonstrated that her statements were material to her naturalization application. But isn't there considerable confusion when the indictment alleges a material violation, but then the jury instructions say you do not need to find materiality? The indictment did say material statement, and then it did cause confusion. But I think the jury instruction cured that problem. Okay. Is that really a lot different than you charge in the conjunctive but then in the instructions? The disjunctive? Yeah, the disjunctive, and that doesn't make a lot of sense either, but that's what the law is. No, it doesn't make a lot of sense, but that is what the law is. Is there something about the immigration proceedings and how somebody comes into this country seeking something, and they meet with an agent, and they have a cursory interview, and then eventually maybe they'll get a more in-depth interview and finally a hearing? Basically, in the unique immigration context, maybe Congress had in mind that we don't want people coming in lying, whether it's material or not, simply because it's so hard in that process to determine, to ferret out who's lying and who's not. You don't make that argument, but it seems like it makes logical sense. Well, there was testimony in the district court from one of the investigators, an asylum officer, maybe, that they rely on, but that's exactly true. They rely on the truthfulness of an advocate, because in most cases there's no way to verify what they're saying. Well, the interesting point about this is that if you focus in on the gravity of the situation to the defendant, they make a compelling argument, but if you look at what the interest of the United States is in this case, whatever it may be, the Congress is, it's okay to come in and lie, and lie through your teeth, about all kinds of things, as long as it doesn't meet a materiality standard. What sort of system would that be? Well, it kind of goes into also the good moral character requirement for naturalization, which was also part of this appeal. Are you aware of a real recent case? I was on the panel. Judge Griffin wrote the opinion. I cannot remember the name of the case, but it's a civil case. It's an asylum case, and it talks about the importance of materiality in that context. It's come out within the last month or six weeks, something like that. I'm sorry. I'm not familiar with it. Well, I'm not sure it has anything to do with this case, but if you were familiar with it, I was going to ask whether you thought it did or had anything instructive to say. I'm sorry. It was a civil? It was a civil asylum case. Okay. But it has, I think, if I'm remembering correctly, and I'm sure my memory is not good, I believe the individual obtained asylum, but the representations were not material to his obtaining asylum. We determined that the asylum should not be disturbed. Well, I don't think that would have an effect. I mean, here I'm trying to think of a statement that wouldn't be material. Assuming, okay, what statement could she have made in one of these applications or one of these interviews, it wouldn't be material. And there's parts of the form that ask, for instance, have you ever been part of an organization, group, et cetera, in the United States or anywhere else. Ms. Maslenyak had been part of the Yugoslavian Girl Scouts, assuming that there was such a thing. Back when Yugoslavia was still a country. She didn't put that down. That wouldn't really be material to her naturalization application or refugee status or anything else. Are you arguing for or against her position? No, I'm just trying to think of what would be a non-material statement and compare it to the statements that she made here and the statements she made here. And that's another part of our argument is even if we were wrong asking for the instruction that we asked for and even if we led the district court down that path and the district court gave the instruction, ultimately the evidence, I think, demonstrated that her statements were material to her application and her naturalization. And I don't need to get into each statement and what she had made. I think the court is familiar with what she said and how many times she said it. And when she finally changed her testimony in her husband's asylum here. Shorja, I think, is a case that even though it was a plain error, our case fits into the facts and the law of that case in a way. Because Shorja came into this country with a fake Italian passport. Eventually, he was found. He answered the same two questions that Mrs. Maslenyak answered. On the form, he answered them in the negative just like she did. And no one objected in that case, so it was a plain error instead of a harmless error. But the court found that the false statements had a tendency to influence whether to grant the application. And that's really what the second part of our argument here, and maybe the part of the argument I want to focus on more, is that the evidence did demonstrate that her statements were material. And even if the jury had been instructed about materiality, it wouldn't have changed the outcome of this case because the statements were material. Can you address a little bit the good moral character issue? Yes. Good moral character was discussed at length in this trial. It's a requirement for naturalization. The judge gave a good moral character instruction because she believed that it would help the jury understand the background of what, entering this country contrary to law under 1425A, what that entailed. She wasn't being prosecuted under a good moral character theory. She was being prosecuted for knowingly obtaining citizenship contrary to law. And part of the contrary to law aspect of that is whether she possessed good moral character. And good moral character has been shown by lying on these, or giving false statements on these, during this application process or in interviews. And so the court felt that that would assist the jury in some of the background and to understand the naturalization process and what it takes and how to be eligible to be a naturalized citizen. And this wasn't, you know, Mrs. Masson-Yonk makes the argument that this is somehow a status base, that this changed the government's theory of prosecution, or that this was somehow a status-based crime like Robinson v. California, which tried to make a crime being addicted to drugs. That's not the case here. It didn't change the government's theory of prosecution. The government's theory of prosecution was always the same, that Mrs. Masson-Yonk had entered this country contrary to law under 1425A. If there's no further questions, I'm going to ask that this court find the judge to bring those people up. Thank you. Thank you, Your Honor. First, I want to address counsel's statement about Georgia. Here's what that opinion said. Although we have not yet addressed the question of whether to recognize the materiality requirement in Section 1425A, the government concedes that the statutory provision contains a materiality element. So I'd submit the government did concede in Georgia that there's a materiality element, and that's because there is. And so then we assume there isn't a materiality element. It's important for this court to define what the government's required to show. And every other circuit court has held that it's Justice Brennan's concurrence, in controlling concurrence, that it requires the government to prove a fair – that the false statement raises a fair inference that the citizen was ineligible. And that is not the theory the government tried this case on. That is not the government's theory on appeal. The government tried this case on Scalia's standard, which only requires that the false statement raise questions that were in the naturalization officer's mind that would have required further digging. Well, let's assume for a moment that you could describe statements that turned out not to be true in at least two categories. One would be one where somebody makes a mistake. Somebody makes a mistake. We see that in these immigration cases a lot. Somebody says the meeting occurred in 2007, but it was really 2006, so we have to deal with that. I'm not talking about a mistake. There are other ones where somebody, for whatever reason, states a false statement, and it's intentional. It's not a mistake. Are you suggesting that the government does not have an interest in deporting people who obtained their citizenship or naturalization by virtue of making knowingly false statements? Even if they're not material? That's the key. To be material, they have to be material. They have to raise a fair question. I'm using the flip side of it. What is this? We welcome all of the downtrodden, and they can lie as much as they want, but as long as it's not material? What sort of standard is that? No, Your Honor. That's not the case. If this was a civil proceeding, Cummings makes it clear that the statement has to be material because of the consequences. In order for the naturalization to be procured by virtue of the misstatement, doesn't it have to be material? Otherwise, it would have had nothing to do with obtaining the naturalization. It's immaterial. That's correct. It would either be a mistake, in which case you also have the problem of a lacked criminal intent, or it would be something that wasn't a mistake, but it might be, for example, a lying about the details of one's personal life for whatever reason, but not having to do anything with naturalization. That would not be material, but naturalization would not have been obtained by virtue of that misstatement. That's correct. There's a whole line of questions that implies that you ask a question on a form that isn't relevant to the naturalization procedure. Presumably, if it's on the form, there's some reason that's related to naturalization. But it has to be the specific intent to obtain naturalization by that false statement. People can lie about it. Well, no question about that occurred here. The question is whether the statement was material. No. There was evidence presented at trial that this mass senior act obtained her refugee status based on her ethnicity, not only based on her husband's status, and this is about her husband's status, whether or not he served in the military, whether his whereabouts were. Your time is up, but I just want to go back to one thing. What is the – I'm not sure I'm remembering this correctly. Did she make the misstatement in question at two different points in the process, one when she entered the country and then in connection with naturalization? That's correct. She made a misstatement along the way and then at her husband's certification. The first time had nothing to do with the naturalization, per se. Right. But that's the underlying misrepresentation that the government alleges that she obtained her refugee status. All right. If there are no further questions, thank you. Well, this is a difficult and interesting case, and we appreciate it very much. We actually are in a vote, and we're circling this very carefully. Mr. Haney, you referred to yourself as a pro-gongo counsel. Were you appointed under the Criminal Justice Act? We were appointed under the Criminal Justice Act. Okay. Well, what you get out of that may seem like pro-gongo service, but nevertheless, we appreciate your having accepted the appointment and your having rendered this service to the defendant and to the court. Thank you very much. Thank you.